**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DESRI JONES, JANET FLEMING, SANDA MOODY and TIFFANI BENOIT, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL NO. 4:24-cv-2105 |
| MEMORIAL HERMANN HEALTH SYSTEM, THE BOARD OF DIRECTORS OF THE MEMORIAL HERMANN HEALTH SYSTEM, THE MEMORIAL HERMANN HEALTH SYSTEM BENEFITS COMMITTEE and JOHN DOES 1- 30. | § § § § § § § § § | |
| Defendants. | § § | |

<u>**DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**</u>

Defendants Memorial Hermann Health System ("Memorial Hermann"), The Board of Directors of the Memorial Hermann Health System (the "Board"), and the Memorial Hermann Health System Benefits Committee (the "Committee") (collectively, "Defendants") file this Motion to Dismiss Plaintiffs Desri Jones, Janet Fleming, Sandra Moody, and Tiffani Benoit's ("Plaintiffs") First Amended Class Action Complaint (the "Amended Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. <u>INTRODUCTION</u>

Plaintiffs' Amended Complaint fails to correct the fatal flaws which were present in the original Complaint. Even worse, Plaintiffs now commit serious pleading errors which completely undermine their credibility, and highlight for the Court that they have no plausible facts to support any of the claims they are trying to pursue here.

Most notably, Plaintiffs challenge the inclusion of the JP Morgan SmartRetirement R6

1

Series Target Date Funds ("JP Morgan R6 TDFs") as an investment option in the Memorial Hermann Health System Employees' Retirement Savings Plan (the 403(b) "Plan"). However, in Defendants' original Motion to Dismiss, Defendants pointed out that Plaintiffs included a graph showing the 2040 vintage[1] of the JP Morgan R6 TDFs either matched or outperformed the Morningstar Lifetime Moderate Index 2040 (the "Morningstar Index") during the bulk of the putative class period. Thus, Plaintiffs' imprudent investment claim was decidedly implausible. Now, Plaintiffs try to hide the bad evidence already in front of the Court by deleting this graph (which remains in the Court's record no matter what Plaintiffs do). However, Plaintiffs commit an even worse sin: the Amended Complaint includes new charts showing the relative performance of the A Share Class of the JP Morgan SmartRetirement TDFs (the "JP Morgan A Share TDFs") against random "comparator" funds. ***But the JP Morgan A Share TDFs are not in the Plan, and never have been in the Plan.*** Rather, Plaintiffs allege in their Amended Complaint that Defendants imprudently included the JP Morgan ***R6*** TDFs.

In other words, all of Plaintiffs' investment performance allegations in their Amended Complaint are ***entirely irrelevant***, and the Court is left with ***absolutely zero substantive factual allegations*** showing the JP Morgan R6 TDFs (the TDFs actually in the Plan) underperformed. Whether Plaintiffs' decision to include irrelevant comparative performance data was simply an error on their part or an attempt to mislead, there is no mistaking that the Amended Complaint offers this Court no well-pled facts that, if true, would offer an inference that Defendants were imprudent in their selection and monitoring of the JP Morgan R6 TDFs. And, this erroneous

---

[1] TDFs, such as the JP Morgan R6 TDFs, are offered as a suite of funds that include different "vintages" based on the target retirement date of the investor. For example, a participant in the Plan here who is expected to retire in or around 2040 would invest in the JP Morgan R6 TDF 2040 fund. The 2040 vintage of the JP Morgan R6 TDF was just one of many vintages of the JP Morgan R6 TDFs offered in the Plan, which Plaintiffs apparently arbitrarily selected as representative for the graph.

pleading strongly calls the credibility of all Plaintiffs' claims into question.

Plaintiffs attempt a similar bait and switch for their excessive recordkeeping fee claim. In their original Motion to Dismiss, Defendants highlighted that Plaintiffs failed to assess or compare the actual recordkeeping *services* used by the Plan *and* the 401(k) plan offered by Memorial Hermann to those of their alleged "comparator" plans. Plaintiffs' alleged "comparator" plans were also different in asset and participant size, not to mention comprised of one plan, not two. In response, the Amended Complaint makes new allegations of imprudence concerning the fiduciary management of *only* the 403(b) Plan. *Compare* Dkt. 18 at p. 1, fn. 2; *with* Dkt. 1 at p. 1, fn. 1. However, Plaintiffs cannot escape the fact that, in this case, Memorial Herman sponsors two retirement plans for which Fidelity provides recordkeeping services.[2] Dropping one retirement plan from the Amended Complaint also does not change that Plaintiffs entirely fail to offer the Court any factual allegations assessing or comparing the services used by the 403(b) Plan or their alleged comparator plans. In other words, the Court is still lacking well-pled factual allegations from which it could infer imprudent management of the Plan's recordkeeping fee. In fact, Plaintiffs' allegations actually demonstrate the Plan's recordkeeping fee *decreased five out of six years* during the Relevant Period.

The Supreme Court has made clear that a court's analysis of a motion to dismiss a complaint alleging a breach of ERISA's duty or prudence "will necessarily be context specific." *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). The context of Plaintiffs' allegations here readily distinguishes the instant case from other cases where claims of imprudent investment selections and excessive recordkeeping fees have survived a motion to dismiss. Indeed, by

---

[2] As discussed herein, the Amended Complaint highlights that Memorial Herman sponsors two significant and distinct retirement plans, serviced by the same recordkeeper (Fidelity). Basic logic counsels this arrangement impacts the scope of services that the recordkeeper must provide to coordinate employee participation in both plans.

misdirecting the Court to the JP Morgan A Share TDFs, the Amended Complaint fails to offer *any* allegations regarding the comparative performance of the JP Morgan R6 TDFs they purport to challenge. And Plaintiffs' recordkeeping allegations are so jumbled and inconsistent that no plausible inference can be made to support a claim. By gutting their own claims with these errant allegations, Plaintiffs have failed to put forth the supporting allegations that courts have consistently required for similar claims to survive a motion to dismiss. *See Perkins v. United Surgical Partners Int'l, Inc*., No. 23-10375, 2024 WL 1574342, at *5 (5th Cir. Apr. 11, 2024); *Matousek v. MidAm. Energy Co*., 51 F.4th 274, 280 (8th Cir. 2022); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1169 (6th Cir. 2022); *Albert v. Oshkosh Corp*., 47 F.4th 570 (7th Cir. 2022).

Finally, Plaintiffs' failure to monitor claim must be dismissed because it is derivative, and Plaintiffs include no allegations regarding what Defendants actually did, or did not do, to monitor the Committee.

Accordingly, as set forth more below, Plaintiffs fail to assert allegations to plausibly state a claim for relief, and the Amended Complaint should be dismissed with prejudice.

## II.  <u>FACTUAL BACKGROUND</u>

Memorial Hermann is one of the largest not-for profit health systems in Southeast Texas, and the Company employs over 33,000 individuals at more than 260 care delivery sites. *See* Memorial Hermann About Our Organization Page, https://www.memorialhermann.org/about-us/our-organization (last visited December 11, 2024). As part of a generous benefits package, Memorial Hermann offers its eligible employees the opportunity to invest in the Plan, which is a 403(b) Plan. *See* Dkt. 18, pp. 3 – 4, ¶¶ 8 – 10. The Plan offers diverse investment options from which participants can choose to invest, including a suite of target date funds (the JP Morgan R6

4

TDFs), and other mutual funds that cover different asset classes, investment styles (*e.g.*, actively managed and passively managed "index" funds), and risk-reward profile funds (*e.g.*, growth, developing markets, bonds, etc.). *See* **Exhibit A** at pp. 57, 128, 322, 433, 527, and 636.[3]

Throughout the putative class period (June 4, 2018 to the present (the "Relevant Period")), the Plan offered approximately eleven different investment options. *Id*. Of the eleven different investment options in the Plan throughout the Relevant Period, Plaintiffs allege the Committee's process for monitoring and retaining the Plan's funds was imprudent because *one* option—the JP Morgan R6 TDFs—purportedly "underperformed." Dkt. 18. at pp. 22-31, ¶¶ 90-111.

During the Relevant Period, the Plan's recordkeeper was Fidelity. *Id.* at p. 40, ¶ 141. Fidelity provided a number of services to the Plan, outlined in the attached Services Agreement, including but not limited to establishment and maintenance of participant accounts and election percentages, maintenance of money classifications, among other services, participant services, such as a 24-hour toll free telephone service for participants to contact, plan accounting services, such as consolidating payroll contributions, maintaining and updating employee data necessary to support plan administration, participant and plan reporting, including but not limited to providing participant statements, and preparing, reconciling, and delivering a monthly "Trial Balance Report" for all money classifications and investments in the Plans; communications,

---

[3] In a Rule 12(b) motion, the Court may properly consider the Plan's Forms 5500 filed with the U.S. Department of Labor, fee disclosures provided to Plan participants, such as Plaintiffs, and documents central to Plaintiffs' claims. *See, e.g.*, *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (holding court ruling on motion to dismiss "may rely on the complaint … documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *see also Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018) (affirming Rule 12 dismissal and holding district court properly considered fund prospectuses not attached to the complaint).

including but not limited to advance notifications of pending corporate actions; and other services, such as "Fidelity Plan Sponsor Webstation,"[4] prospectus delivery to plan participants for all mutual funds in the Plans, and change of address services. Exhibit B, at pp. 21 – 22. Fidelity also provided additional, specific services to the 403(b) Plan, including: government reporting, such as processing year-end tax reports for 403(b) Plan participants; communication and education services, such as designing, producing, and distributing a customized comprehensive communications program for 403(b) Plan participants, and providing online retirement planning tools; participant reporting, including IRS Code Section 402(f) notifications for distributions from the 403(b) Plan, and IRS Code Section 411(a)(11) notices to Plan participants; and calculation services, by determining and providing 403(b) Plan participants with the maximum legally permissible 403(b) salary deferral contribution for each year; in addition to contribution rollover processing, processing DROs, loans, non-discrimination testing, and participant disclosure services. *See id.* at pp. 22 – 24.

## III. <u>ARGUMENT AND AUTHORITIES</u>

### A.    LEGAL STANDARD

"[T]o survive a Rule 12(b)(6) motion to dismiss, [plaintiffs] must plead 'enough facts to state a claim to relief that is plausible on its face.'" *New Orleans City v. Ambac Assurance Corp.*, 815 F.3d 196, 200 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To be "plausible," a plaintiff's allegations must raise "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

---

[4] Fidelity's Plan Sponsor Webstation is an application "that provides current plan and Participant-level information, including indicative data, account balances, activity and history." Exhibit B, at p. 21.

"Similarly, the Court is not 'bound to accept as true a legal conclusion couched as a factual allegation.'" *In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig*., 997 F. Supp. 2d 526, 533 (N.D. Tex. 2014) (quoting *Twombly*, 550 U.S. at 555). If the allegations do not meet this standard, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

To state a claim for breach of ERISA's fiduciary duty of prudence, a plaintiff must offer well-pled factual allegations showing the fiduciary failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Notably, "ERISA [] does not give the federal courts a broad license to second-guess the investments decisions of retirement plans." *Commonspirit*, 37 F.4th at 1162. Thus, in assessing allegations of a breach of ERISA's duty of prudence, a court must apply "careful, context-sensitive scrutiny," recognizing that ERISA fiduciaries will often face "difficult tradeoffs" and a court "must give due regard to the range of reasonable judgements a fiduciary may make," even in the Rule 12 context. *Fifth Third Bancorp v. Dudenhoeffer,* 573 U.S. 409, 425 (2014); *see also Hughes*, 595 U.S. at 177 (explaining that, at the pleading stage, "the appropriate inquiry [for ERISA fiduciary duty cases] will necessarily be context specific," because "the content of the duty of prudence turns on 'the circumstances … prevailing' at the time the fiduciary acts") (citations omitted).

## B.    PLAINTIFFS FAIL TO STATE A BREACH OF FIDUCIARY DUTY CLAIM

Count I of Plaintiffs' Amended Complaint alleges the Committee violated ERISA's fiduciary duty of prudence in two ways. First, Plaintiffs allege the Committee should have

removed the JP Morgan R6 TDFs from the Plan at the beginning of the Relevant Period and replaced them with one of Plaintiffs' purported comparator funds (the "Investment Claim"). Dkt. 18 at pp. 22-31, ¶¶ 90-111. Second, Plaintiffs allege the Committee failed to appropriately monitor the fees charged by the recordkeeper for the Plan, Fidelity (the "Recordkeeping Claim"). *Id.* at pp. 34-51, ¶¶ 120-78. As discussed below, the allegations in support of these claims fail to set forth a plausible breach of ERISA's fiduciary duty of prudence.

**1.    Plaintiffs' Allegations in Support of Their Investment Claim are Insufficient.**

Plaintiffs offer no allegations about the Committee's process for selecting the JP Morgan R6 TDFs; therefore, they must offer circumstantial facts that would permit this Court to infer imprudence with respect to the Committee's investment monitoring process. *See Perkins*, 2024 WL 1574342, at *2; *see also Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020). But no such facts are alleged here. The Complaint offers no factual allegations regarding the comparative performance of the JP Morgan R6 TDFs; instead, the Complaint compares the performance of the JP Morgan A Share TDFs, ***which are not and never were in the Plan***, leaving the Court with no plausible factual allegations it could use to infer the Committee's investment monitoring process was imprudent. Even if Plaintiffs provided accurate data in the Complaint, their sole contention is that an imprudent process should be inferred because a fund allegedly underperformed their self-selected "Comparator Funds," ***before*** the Relevant Period, and at one point during the Relevant Period. Dkt. 18 at pp. 25 – 32, ¶¶ 100 – 105. Courts have repeatedly held such allegations to be insufficient to plausibly state a claim for breach of ERISA's fiduciary duty. As a result, Plaintiffs' Complaint fails to state a claim for relief with respect to their Investment Claim.

> i.    ***Plaintiffs' Amended Complaint Contains no Factual Allegations About the Comparative Performance of the JP Morgan R6***

***TDFs.***

The Complaint does not contain any non-conclusory allegations demonstrating underperformance by the JP Morgan ***R6*** TDFs. The only allegations in the original Complaint concerning the performance of the JP Morgan R6 TDFs was a graph that pitted the performance of the 2040 vintage against the performance of the Morningstar Index. Dkt. 1 at pp. 20 – 21. ¶¶ 80-81. As Defendants' initial Motion to Dismiss highlighted, however, Plaintiffs' graph actually showed that, beginning as early as March 2020 and through the end of 2021, the JP Morgan R6 2040 TDF performed on track with, or ***outperformed***, the index. *See id.*; *see also* Dkt. 10, at pp. 9-12.

In face of this argument, Plaintiffs amended their Complaint to understandably remove the graph, focusing instead on performance relative to alleged comparator funds, in addition to the Morningstar Index, and across multiple TDF vintages.[5] *Compare* Dkt. 1 at pp. 21 – 22, ¶¶ 79 – 82; *with* Dkt. 18 at pp. 26 – 31, ¶¶ 101 – 111. The Amended Complaint still fails, however, to set out any allegations regarding the JP Morgan ***R6*** TDFs. Instead, the new comparative allegations in the Amended Complaint pit the returns of the JP Morgan ***A Share*** TDFs against the returns of other alleged comparators, in addition to the Morningstar Index. *Compare* Dkt. 18 at p. 6, ¶ 18; pp. 21-22, ¶¶ 83-86, p. 22, §B (bringing ERISA claim based on challenging the imprudence of the fiduciaries inclusion and retention of the R6 series of JP Morgan TDFs); *with id.* at pp. 26 – 34, ¶¶101 – 111 (containing charts comparing fees and performance of the A Share Class series of JPMorgan TDFs). In other words, as the sole factual support for Plaintiffs' Investment Claim challenging the Committee's process, Plaintiffs assess the comparative returns

---

[5] In this regard, it is particularly important to emphasize ERISA does not require a fiduciary to choose the best performing fund. The mere fact that Plaintiffs were able, with the benefit of hindsight, to identify funds that outperformed the challenged fund in the Plan at a specific point in time is simply insufficient to plausibly allege imprudence. *See infra* at pp. 10 – 12.

of a fund that is not only not challenged within the Amended Complaint, but was also **not in the Plan during the Relevant Period.** *See* Dkt. 18 at pp. 26 – 34, ¶¶ 101 – 119; *see also supra* at pp. 4 – 5.

Plaintiffs' comparison of the returns of the JP Morgan A Share TDFs provides nothing this Court could rely on to infer a plausible claim of imprudence based on the Committee's monitoring and retention of the JP Morgan *R6* TDFs. Accordingly, even after an opportunity to amend the original Complaint, Plaintiffs fail to effectively point to any investment that performed better than the challenged JPMorgan R6 TDFs during any extended period of time. Putting aside that courts are skeptical of standalone comparator allegations being sufficient to support an ERISA breach of fiduciary duty claim (*see infra* at pp. 10 – 12), the complete absence of such alleged facts makes abundantly clear the Amended Complaint fails to raise a plausible imprudent Investment Claim, and Plaintiffs' claim should be dismissed with prejudice.

### ii. Conclusory Allegations That Alternative Funds "Outperformed" a Challenged Fund are not Sufficient to Infer a Breach of ERISA's Fiduciary Duty of Prudence.

Setting aside Plaintiffs' complete lack of analysis of the performance of the JP Morgan R6 TDFs, ERISA *does not* "require[] a fiduciary to pick the best performing fund." *Meiners*, 893 F.3d at 822-23; *Commonspirit*, 37 F.4th at 1165; *Forman v. TriHealth, Inc.*, 40 F.4th 443, 449 (6th Cir. 2022); *Davis*, 960 F.3d at 485; *Laboy v. Bd. of Trs. of Bldg. Serv.*, 513 F. App'x 78, 79-80 (2d Cir. 2013) (affirming 12(b)(6) dismissal because plaintiff's allegations of poor performance alone did not state a claim for fiduciary breach). Circuit Courts have repeatedly held that alleging some other alternative fund in the market allegedly performed better than a challenged fund, without more, does not state a plausible claim for breach of ERISA's fiduciary duty of prudence. *See, e.g.*, *Meiners*, 898 F.3d at 822-23 ("The fact that one fund with a different

investment strategy ultimately performed better does not establish anything about whether the [challenged funds] were an imprudent choice at the outset"); *Commonspirit*, 37 F.4th at 1166 ("a showing of imprudence [does not] come down to simply pointing to a fund with better performance"); *Forman*, 40 F.4th at 443 (same); *White v. Chevron Corp.*, 752 Fed.Appx. 453, 455 (9th Cir. 2018) (affirming dismissal of similar claim because allegations "showed only that [the defendant] could have chosen different vehicles of investment that performed better during the relevant period."); *see also Patterson v. Morgan Stanley*, No. 16-cv-6568, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019) ("Put simply, the duty of prudence does not compel fiduciaries to reflexively jettison investment options in favor of the prior year's top performers. If that were the case, Plan sponsors would be duty-bound to merely follow the industry rankings for the past year's results, even though past performance is no guarantee of future success. ***Clearly, no court has ever suggested the existence of such a duty***.") (emphasis added).

Accordingly, it remains that Plaintiffs' threadbare assertions about the alleged underperformance of the JP Morgan R6 TDFs as compared to so-called comparator funds are not enough to infer an imprudent fiduciary *process*. *See* Dkt. 18 at pp. 26-34, ¶¶ 101-111. This is particularly true when, as here, there are no allegations that, in selecting or retaining the challenged fund, the fiduciaries acted outside the "range of reasonable judgments." *Hughes*, 595 U.S. at 177. In *Forman*, the Sixth Circuit elaborated on these principles, explaining:

> Disappointing performance in the near term and higher costs do not by themselves show "deficient decision-making," especially when we account for competing explanations and other common sense aspects of long-term investments. Different services, investment strategies, and investor preferences invariably lead to a spectrum of options – and in turn a spectrum of reasonable fee structures and performance outcomes. As a result, side-by-side comparisons of how two funds performed in a narrow window of time, with no consideration of their distinct objectives, will not tell a fiduciary which is the more prudent long-term investment option.

40 F.4th at 443 (citations omitted). District courts in this Circuit agree. *Locascio v. Fluor Corp.*, No. 22-cv-0154, 2023 WL 320000, at *6 (N.D. Tex. Jan. 18, 2023) ("Put bluntly, a flawed fiduciary process can result in great returns while a diligent and complete fiduciary process can result in underperformance."). In *Locascio*, the Court reiterated that "[t]he focus of the inquiry is 'how the fiduciary acted,' not 'whether his investments succeeded or failed,'" which is why "data from other investments that outperformed the [challenged] investments does little to aid the Court in evaluating the fiduciary process." *Id.*

In sum, Plaintiffs have completely failed to meet the standard courts have required to plausibly allege an investment imprudence claim under ERISA.

### iii. Plaintiffs' Allegations Regarding Fund Expense Ratios are Similarly Erroneous.

In a last gasp attempt to salvage their Investment Claim, Plaintiffs purport to challenge the expense ratios of the JP Morgan R6 TDFs as excessive when compared to other funds in the market. *See* Dkt. 18 at pp. 32 – 34, ¶¶ 112 – 119. However, similar to Plaintiffs' comparative performance allegations, the Amended Complaint again contains allegations regarding the JP Morgan **A Share** TDFs, instead of the JP Morgan R6 TDFs. *See id.* Plaintiffs allege reasonable expense ratios range from 0.60% to 0.65%, and they criticize the Committee for allegedly allowing TDFs in the Plan with expense ratios ranging from 0.79% to 0.85%. *See id.* However, the JP Morgan R6 TDFs (the actual funds in the Plan) have expense ratios ranging from 0.41% to 0.53%, which is significantly lower than the "Peer Group Median Expense Ratio" Plaintiffs claim would have been charged if the Committee followed a prudent investment monitoring process. *Compare* Exhibit C, at pp. 7 – 8; *with* Dkt. 18 at p. 34, ¶ 118.

Accordingly, Plaintiffs' allegations regarding allegedly excessive expense ratios is erroneous. In fact, these allegations demonstrate the Committee's prudence with respect to

monitoring the fees of the funds in the Plan, including the JP Morgan R6 TDF. Therefore, for this additional reason, Plaintiffs' Investment Claim should be dismissed with prejudice.

> **2.     Plaintiffs' Allegations Regarding "Unreasonable" and "Excessive" Administrative Fees are Conclusory and do not Support an Imprudence Claim.**

Plaintiffs Amended Complaint likewise fails to provide sufficient allegations for this Court to infer the Committee engaged in an imprudent process in monitoring the approximately $40 per participant fee charged by Fidelity as the recordkeeper for the Plan. To state a claim that a service provider's fees are excessive, Plaintiffs must, at a minimum, compare the recordkeeping fee for the Plan with the fee charged to other similar retirement plans for similar recordkeeping services. *See Perkins*, 2024 WL 1574342, at *5 (holding it is insufficient to compare recordkeeping costs for a plan to industry-wide averages, or to compare a plan with one not similarly sized or that does not offer similar recordkeeping services). As described below, Plaintiffs fail to make a plausible showing that the recordkeeping fee charged by Fidelity to the Plan was excessive.

> ### i.  *Plaintiffs Fail to Allege What Specific Types of Services the Alleged Comparator Plans Received Relative to the Plan.*

The Amended Complaint still fails to assert allegations comparing the recordkeeping services offered by Fidelity to the Plan to the services offered to their so-called comparator plans. Instead, Plaintiffs once again merely attach a generic "Fidelity Service Agreement" to the Amended Complaint, and generally aver that "[n]early all recordkeepers in the marketplace offer the same range of services and can provide the services at very little cost." Dkt. 18 at p. 36, ¶ 128. And, without alleging any facts that, if true, would support their proposition, Plaintiffs summarily allege that "[t]hese services are offered by all recordkeepers for one price" and "[t]he

services chosen by a large plan do not affect the amount charged by recordkeepers." *Id.* at p. 37, ¶¶ 130-31.

As Defendants explained in their initial Motion to Dismiss, case law clearly rejects Plaintiffs' contention that the "services chosen by a large plan do not affect the amount charged by recordkeepers." *Compare id.* at p. 37, ¶ 131; *with Young v. GM Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (requiring plaintiffs to "allege that the fees were excessive *relative 'to the services rendered'*") (citation omitted) (emphasis added); *Matousek*, 51 F.4th at 280 (analyzing the specific services provided by challenged recordkeeper when comparing an excessive-recordkeeping-fee claim at the pleading stage); *Riley v. Olin Corp.*, No. 21-cv-01328, 2023 WL 371872, at *3-4 (E.D. Mo. Jan. 24, 2023) (rejecting "conclusory" allegation that "recordkeepers in the marketplace offer the same range of services" as failing to provide a comparison of specific recordkeeping services). Specifically, courts have rejected Plaintiffs' summary allegation that recordkeeping fees can be evaluated without considering the services provided in exchange for the fees. *See England v. DENSO Int'l Am., Inc*., No. 22-11129, 2023 WL 4851878, at *3 & n. 5 (E.D. Mich. July 28, 2023) (footnote collecting cases) ("Courts have characterized as conclusory the … allegations that mega plans receive nearly identical recordkeeping services and that any difference in services is immaterial to the price of those services—and they have found that these allegations are insufficient to permit the Court to infer that particular recordkeeping fees were excessive compared to the services rendered.").

Simply put, what you pay for matters and a conclusory allegation that "fees are too high," without any analysis of what was received in return, does not plausibly allege an excessive fee. *See, e.g.*, *Naylor v. BAE Systems, Inc.*, No. 24-00536, 2024 WL 4112322, at *8 (E.D. Va. Sept. 5, 2024) (citing *Davis*, 960 F.3d at 484) (dismissing excessive fee claim where "[a]t bottom,

Plaintiff's claims are simply that [administrative] fees are too high – but that is not enough to state a plausible claim for imprudence."). Despite an opportunity to amend, Plaintiffs' Amended Complaint continues to ignore this crucial part of any recordkeeping fee analysis, and, as a result, their Recordkeeping Claim is implausible and must be dismissed with prejudice.

### ii.   The New Charts Plaintiffs Created for the Amended Complaint Still Fail to Demonstrate Imprudence.

Trying to distract from their failure to offer any factual allegations regarding the Plan's recordkeeping services, Plaintiffs offer a new chart comparing the Plan to other retirement plans that they use to allege the Plan's recordkeeping fee of $40 per participant is unreasonable. *See* Dkt. 18 at pp. 45-49, ¶¶ 160-69. However, the allegations in the Amended Complaint remain insufficient to support a plausible inference of an imprudent process for monitoring a plan's recordkeeping fees because they continue to ignore the differences in services being provided. *See Perkins*, 2024 WL 1574342, at *5 (stating it is insufficient to compare recordkeeping costs for a plan to industry-wide averages or to compare a plan with one not similarly sized or that does not offer similar recordkeeping services).

Notably, in *Perkins*, the Fifth Circuit reversed the lower court's dismissal of the plaintiffs' recordkeeping claim; however, the Fifth Circuit only reached this holding because the plaintiffs in *Perkins* "compare[d] the Plan's recordkeeping costs with the costs for similar recordkeeping services provided to a similar number of participants." *Id.* at *5. Plaintiffs' charts, however, do not compare any of the services provided to their comparator plans. *Compare* Dkt. 18 at pp. 45 – 48, ¶¶ 162 – 165; *with 16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense."); *DENSO Int'l Am., Inc.*, 2023 WL 4851878, at *4 ("the form 5500s on which Plaintiffs rely also do not provide information from which the Court

could plausibly infer that the recordkeeping fee charged by the other recordkeepers covered the same services").

Notably, Plaintiffs' comparison charts only include *one* 403(b) plan as a comparator, and the rest of the comparators are 401(k) plans. The sole 403(b) plan in the Amended Complaint, the Beaumont Health 403(b) Plan (the "Beaumont Plan"), was charged a recordkeeping fee of $28 per participant. Dkt. 18 at p. 47, ¶ 163. However, the Beaumont Plan has 33,484 participants (almost 150% more than the Plan at issue here), and over $2.6 billion in assets (nearly double the assets than the Plan at issue here). *See id.* Further, the Amended Complaint still acknowledges (as it must) that Memorial Hermann also sponsors a 401(k) Plan for which Fidelity is the recordkeeper, and Plaintiffs fail to offer any comparison of fees charged by a recordkeeper servicing two retirement plans for a single plan sponsor. Accordingly, Plaintiffs do not offer any relevant comparators this Court could use to infer the Plan's recordkeeping fee was excessive. *See Matney v. Barrick Gold of N. Am.,* 80 F.4th 1136, 1157 (10th Cir. 2023) (holding, "[i]n the context of a breach of the duty of prudence, 'the way to plausibly plead a recordkeeping fees claim is to identify *similar plans* offering the *same services for less*'") (citing *Matousek*, 51 F.4th at 279).

However, other charts prepared by Plaintiffs in the Amended Complaint demonstrate the Committee's *prudence* with respect to the recordkeeping fee during the Relevant Period. Specifically, one of Plaintiffs' charts summarizes the Plan's recordkeeping fees over time, and explicitly demonstrates that the recordkeeping fee for the Plan ***decreased in each year during the Relevant Period***. Dkt. 18 at p. 44, ¶ 158. Taking Plaintiffs' calculations as true, the Plan's recordkeeping fee was $48.79 per participant in 2018, $46.71 per participant in 2019, $46.35 per participant in 2020, $44.99 per participant in 2021, $40.00 in 2022, and $40.00 in 2023. *Id.* In

other words, the Committee secured a decrease of the recordkeeping fee for the Plan *in five out of the six years during the Relevant Period, with no increases in the fee at any time*. *See id.* Courts have held that similar decreases in fees charged by service providers during the Relevant Period is **evidence of prudence**, not imprudence. *See Matney v. Barrick Gold of N. Am., Inc.*, No. 20-cv-275, 2022 WL 1186532, at *12 (D. Ut. Apr. 21, 2022) *aff'd by* 80 F.4th 1136 (10th Cir. 2023) (dismissing excessive recordkeeping fee claim at pleading stage where defendant reduced the recordkeeping fee during the relevant period); *Laird v. Marmon Holdings, Inc.*, No. 22-cv-4332, 2023 WL 6198805, at *3 (N.D. Ill. Sept. 22, 2023) (holding plaintiffs' excessive recordkeeping fee allegations were "directly contradicted by the data they cite in their own complaint," which showed "the Plan's recordkeeping fees decreased every year during the Class Period from 2016 to 2020.").

Accordingly, Plaintiffs' Recordkeeping Claim is implausible and must be dismissed with prejudice.

### iii.    *Plaintiffs' Conclusory Allegation That Committee Defendants Failed to Solicit RFPs is Insufficient to Infer a Breach of the Duty of Prudence.*

Relying on circular logic, Plaintiffs once again attempt to support their Recordkeeping Claim by alleging the Committee must not have conducted RFPs[6] for recordkeeping services due to the allegedly excessive recordkeeping fee. Dkt. 18 at pp. 41-42, ¶¶ 145-49. But it remains that this conclusory allegation is the exact type of speculation that the Court's gatekeeping function is meant to eliminate on a motion to dismiss. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). Even if Plaintiffs' conclusory allegation that the Committee did not conduct RFPs at reasonable intervals was true, it is insufficient as a matter of law to state a

---

[6] A plan may conduct a Request for Proposal ("RFP") to solicit new recordkeeping rates. Dkt. 18 at p. 41, ¶ 146.

claim for breach of ERISA's duty of prudence. *See Albert*, 47 F.4th at 579 ("[W]e [have] rejected the notion that a failure to regularly solicit quotes or competitive bids from service providers breaches the duty of prudence."); *see also Johnson v. Providence Health & Servs.*, No. 17-1779, 2018 WL 1427421, at *7 – 8 (W.D. Wash. Mar. 22, 2018) (rejecting allegation defendant could have obtained lower recordkeeping fee through RFP as conclusory because recordkeeping fee decreased during the relevant period).

Accordingly, this speculative allegation does not support the Recordkeeping Claim and should be disregarded.

### iv.  The <u>Moitoso</u> Stipulation is not Evidence the Plan's Recordkeeping Fee is Excessive.

Finally, Plaintiffs repeat the argument from their original Complaint that a stipulation Fidelity made regarding fees in the case *Moitoso, et al. v. FMR, et al.*, is evidence the Plan's recordkeeping fees here were excessive. Dkt. 18 at pp. 49 – 50, ¶¶ 170 – 175 (citing 451 F.Supp.3d 189, 214 (D.Mass. 2020)). But it remains that multiple courts have rejected this specific argument because it fails to show the services Fidelity offered to the plan in that case – **which was its own benefit plan** – or that the participant or asset size in *Moitoso* are equivalent to the Plan at issue here. *See e.g., Sigetich v. Kroger Co.*, No. 1:21-cv-697, 2023 WL 2431667, at *10 n.6 (S.D. Ohio Mar. 9, 2023); *Fritton v. Taylor Corp.*, No. 22-cv-00415 , 2022 WL 17584416, at *8 (D. Minn. Dec. 12, 2022) (declining to consider Fidelity stipulation as a "meaningful benchmark"); *Wehner v. Genentech, Inc.*, No. 20-CV-06894-WHO, 2021 WL 507599, at *6 (N.D. Cal. Feb. 9, 2021) (same). As in the other cases that have rejected this exact argument, Plaintiffs fail to allege how the services Fidelity offers the Plan are at all similar to that in *Moitoso*. Dkt. 18 at pp. 49 – 50, ¶¶ 170 – 175. Accordingly, Plaintiffs' reliance on Fidelity's stipulation in *Moitoso* does not support their Recordkeeping Claim and should be

disregarded.

The fallacy of relying on purported comparisons of price as admitted or pled in other cases without reference to the services provided is further illustrated by Plaintiffs' own counsel's assertions in similar lawsuits. In contrast to the allegations in the Amended Complaint, Plaintiffs' counsel has alleged in other lawsuits that, without regard to services provided, *$40 per participant is a reasonable fee during the Relevant Period*. *See* Dkt. 10, Exs. B and C. Said another way, Plaintiffs claim here that a $40 per participant recordkeeping fee is excessive for a Plan this size, when their own counsel has admitted in other court pleadings this exact fee is reasonable for retirement plans this size. These contradicting allegations serve to underscore the baseless nature of Plaintiffs' claims and, in particular, the implausibility of their conclusory and unsupported Recordkeeping Claim.

Accordingly, Plaintiffs' allegations in support of their Recordkeeping Claim fail to plausibly state a claim and should be dismissed with prejudice.

## C.    PLAINTIFFS DO NOT STATE A CLAIM FOR BREACH OF THE DUTY TO MONITOR

### 1.    Plaintiffs' Allegations Fail to State a Failure to Monitor Claim

Count II alleges that Memorial Hermann and the Board failed to adequately monitor the Committee in violation of ERISA. Dkt. 18 at pp. 53-54, ¶¶ 187-93. However, a duty-to-monitor claim is derivative. *In re Dell, Inc. ERISA Litig.*, 563 F.Supp.2d 681, 695 (W.D.Tex. 2008). Plaintiffs fail to state an underlying ERISA violation, as shown above; thus, their derivative failure-to-monitor claim also fails. *Id.*

Further, "[f]or the Court to infer a failure to monitor, it would need to not only see facts showing instances of insufficient monitoring, but it would also need to see facts that demonstrate why sufficient monitoring would have caused" the Defendants to take the actions Plaintiffs

19

allege they should have taken. *Locascio*, 2023 WL 320000, at *7. This claim fails for the separate reason that Plaintiffs fail to allege any facts suggesting Memorial Hermann or the Board plausibly breached their fiduciary duty-to-monitor under ERISA. *See generally* Dkt. 18 at pp. 53 – 54, ¶¶ 187 – 193.

### 2. The Board Defendants Do Not Have Capacity to be Sued Under Texas Law

Furthermore, the Court must dismiss Plaintiffs' failure to monitor claim because Federal Rule of Civil Procedure 17 requires that a party must have the capacity to sue, or be sued, and under Texas law, Plaintiffs do not have the capacity to sue the Board. *See* F.R.C.P. 17(b)(3); *Sain v. Collier,* No. 18–4412, 2019 WL 4144321, at *10 (S.D. Tex. Aug. 30, 2019) ("An entity's capacity to sue or be sued 'shall be determined by the law of the state where the court is located.'") (quoting Fed. R. Civ. P 17(b)(3)); *see also Perkins*, No 21-cv-00973, 2022 WL 824839, at *7 (N.D. Tex. Mar. 18, 2022) (dismissing virtually identical claim against board of directors by Plaintiff's counsel and holding "Fifth Circuit has 'never recognized [a] theory of ERISA fiduciary liability' that holds corporate directors personally liable for failing to monitor fiduciaries appointed by the directors.") For this additional reason, Plaintiffs' failure-to-monitor claim against the Board Defendants must be dismissed.

### IV.  CONCLUSION

Plaintiffs have alleged no facts plausibly demonstrating Defendants failed to follow a prudent process, or failed to monitor fiduciaries, and the Amended Complaint should be dismissed with prejudice.

*Of Counsel:*

Respectfully submitted,

Wesley Stockard
Admitted Pro Hac Vice
Rachel P. Kaercher
Admitted Pro Hac Vice
LITTLER MENDELSON, P.C.
3424 Peachtree Rd NE, Suite 1200
Atlanta, GA 30326
Telephone:  404.233.0330
Facsimile:  404.233.2361

Bradley Crowell
Admitted Pro Hac Vice
LITTLER MENDELSON, P.C.
1900 Sixteenth Street
Suite 800
Denver, CO 80202
Telephone:  303.362.2828
Facsimile:  303.629.0200

/s/ *Danielle K. Herring*
Danielle K. Herring (Attorney-in-Charge)
Texas State Bar No. 24041281
Federal I.D. No. 36896
LITTLER MENDELSON, P.C.
1301 McKinney Street, Suite 1900
Houston, TX  77010
Telephone:  713.951.9400
Facsimile:  713.951.9212

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that, on December 11, 2024, I served a true and correct copy of the foregoing document via electronic service upon counsel of record.

/s/ *Danielle Herring*
Danielle Herring