IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DESRI JONES, *et al.* <br> Plaintiffs, <br><br> v. <br><br> MEMORIAL HERMANN HEALTH SYSTEM, *et al.*, <br> Defendants. | § § § § § § § § § | CIVIL NO. 4:24-cv-2105 |

### DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS[1]

**A.    The FAC Fails to State a Claim Based on Fund Underperformance.**

Plaintiffs admit that the First Amended Complaint ("FAC") fund performance allegations are based on alleged underperformance of a fund that was not an option in the Plan. (Doc. 33 at 2). This alone is enough to warrant dismissal.[2] Plaintiffs attempt to overcome this massive oversight by nonsensically averring that "net of fee" returns are the same for share classes with different costs, and that the entire FAC should proceed because the recordkeeping claims alone pass muster. Neither argument has merit.[3]

---

[1] Plaintiffs attach a Proposed Second Amended Complaint ("PSAC") to their Opposition and ask that if Defendants' Motion is granted they be given leave to file it. Defendants would be profoundly disadvantaged if required to address the deficiencies in the Opposition and the PSAC within the 5 pages permitted on reply. If the Court is inclined to consider allowing Plaintiffs to amend their complaint a second time, Defendants ask they be required to file a proper Motion for Leave to Amend and/or that Defendants be given leave to file a full 20-page opposition to that request to demonstrate the clear deficiencies in the PSAC.

[2] Plaintiffs concede that the allegations related to excessive cost are not plausible given that they rely on data for the JP Morgan A Share TDFs and are "no longer pursuing the excessive investment fee allegations." (Doc. 33 at 15). Thus, this claim should be dismissed.

[3] Confusingly, Plaintiffs also attempt to salvage their underperformance claim by referring back to the comparative data for the JP Morgan R6 TDFs in the original complaint (Doc. 33 at 14, 15 (accusing Defendants of "ignoring" this data)). Putting aside that the amended pleading supersedes the original, *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015), as Defendants showed in their original motion to dismiss, the JP Morgan R6 TDF data in the original complaint showed the funds ***outperformed*** comparators. (Doc. 10 at 9-12).

1

1. **Allegations about Excessive Recordkeeping Fees Do Not Save an Admittedly Implausible Fund Underperformance Claim.**

Recordkeeping fee allegations, even if plausible, do not permit Plaintiffs to pursue implausible claims based on alleged fund underperformance. *Perkins v. United Surg. Partners Int'l Inc.* does not state otherwise. To the contrary, it is only once the *Perkins* court determined there were plausible allegations as to **both** fund performance and fees that it declined to address whether the plaintiff's other allegations stated a claim. No. 23-10375, 2024 WL 1574342, at *5 & n.9 (5th Cir. Apr. 11, 2024) (emphasis added) (declining to consider other allegations "because we conclude the allegations concerning **the classes of shares offered *and* recordkeeping costs** support a plausible[] claim"). Evaluating fund performance and excessive fee allegations separately at the pleading stage is consistent with other courts across the country, and the Court should do so here. *E.g.*, *Rodriguez v. Hy-Vee, Inc.*, No. 422CV00072SHLHCA, 2022 WL 16648825, at *1, 12 (S.D. Iowa Oct. 21, 2022) (rejecting "whole complaint" argument and raising discovery considerations noted below). Whether an imprudent fiduciary process resulted in excessive recordkeeping fees or, instead, retention of underperforming funds are fundamentally different inquiries. Forcing Defendants to marshal evidence in discovery to defend against implausible assertions is inconsistent with both common sense and the Federal Rules of Civil Procedure. It is both appropriate and judicially expeditious to consider two sets of allegations resulting in separate harms independently in ruling on the Motion to Dismiss.

2. **The FAC Allegations Do Not Equally Apply to the JP Morgan R6 TDFs.**

Plaintiffs' use of performance data for the JP Morgan A Share TDFs in the FAC is not a harmless scrivener's error that can somehow still plausibly show underperformance of the JP Morgan R6 TDFs. First, it is simply not true that performance "net of fees" for share classes with different costs is identical. (Doc. 33 at 15). To the contrary, as Fidelity's website explains, a "net

2

of fees" calculation "reduc[es] the performance by the effect of all applicable fees . . ." Fidelity Help Contents, *How are fees handled in the Performance Calculation?*, available at https://www.fidelity.com/webcontent/ap002390-mlo-content/19.09/help/learn_performancereporting.shtml. Thus, performance "net of fees" for the more expensive JP Morgan A Share TDFs will be reduced as compared to performance "net of fees" for the less expensive JP Morgan R6 TDFs. The figures are decidedly not interchangeable.

It is equally untrue that differences in "net of fee" performance only affect the amount of losses with no appreciable impact on plausible liability. (*See* Doc. 33 at 14). Indeed, the Opposition itself suggests that it is "huge losses" which support a plausible inference of imprudent investment decisions. (*See id.* at 15); *see also Luckett v. Wintrust Fin. Corp.*, No. 22-cv-03968, 2024 WL 3823175, at *5 (N.D. Ill. Aug. 14, 2024) (collecting cases) (substantial underperformance required to support inference of imprudent retention); *Patterson v. Morgan Stanley*, No. 16-cv-6568-RJS, 2019 WL 4934834, at *10 (S.D.N.Y. Oct. 7, 2019) (same); *Stark v. Keycorp*, No. 1:20-CV-01254, 2021 WL 1758269, at *11 (N.D. Ohio May 4, 2021) (same). Because the allegations in the FAC are all about losses, and because losses associated with the admittedly cheaper JP Morgan R6 TDFs are obviously smaller (and Plaintiffs haven't offered any allegations assessing those different losses), and because small losses alone are not sufficient to infer imprudence, there is no way to read into the FAC a plausible claim of underperformance for the JP Morgan R6 TDFs that were actually in the Plan.

**B.    The FAC Fails to State a Claim Based on Excessive Recordkeeping Fees.[4]**

Although Plaintiffs rely heavily upon the case, it remains true that the FAC does not meet

---

[4] The Fidelity Agreement can be considered in deciding the Motion. (Doc. 25 at 5 n.3). That Plaintiffs did not have it prior to filing does not change that the contract is fundamentally central to a claim alleging that the fees paid were excessive. Cases cited otherwise relate to non-documentary media of disputed accuracy and are distinguishable. (Doc. 33 at 8-9).

the plausibility standard of *Perkins*. To the contrary, *Perkins* specifically concluded that "Plaintiffs' allegations about **comparative costs *and services*** are sufficient to survive dismissal." 2024 WL 1574342, at *5 (emphasis added). Indeed, the Fifth Circuit Court specifically noted allegations that "plans with a similar number of participants paid significantly less for recordkeeping services ***that are similar to those which the Plan received***," relying on the fact that the complaint drew parallels between the services provided to the plan and the services provided to other similarly sized plans by relying on codes in the Form 5500s. *Id.* at *4 & n.6 (emphasis added); *see also Perkins*, Case 3:21-cv-00973-X, at [Doc. 24 ¶¶ 68-69, 80 & n.12].

There are no such factual allegations showing that similarly sized plans paid less money for the same services here.[5] Instead, the FAC focuses on the services provided being "basic and fungible" and contends that they "do not affect the amount charged by recordkeepers," before comparing the fee charged to the Plan to other plans without regard to services provided. (Doc. 18 ¶¶ 131, 138, 163 & n.23). Unlike *Perkins*, Plaintiffs make no allegation that the comparator plans received similar services by reference to specific Form 5500 codes; the footnote they cite in their Opposition to contend otherwise does nothing more than provide a non-exhaustive list of codes that can be considered "recordkeeping fees" within the Form. *Compare* Case 3:21-cv-00973-X, at [Doc. 24 ¶¶ 68-69, 80 & n.12] *with* (Doc. 18 ¶¶ 131, 138, 163 & n.23). Allegations about excessive cost that do not show the same services were available for less do not permit a plausible inference

---

[5] This lack of allegations establishing similar services were provided to a similarly sized plan for less extends to both the Fidelity Stipulation and the Memorial Hermann 401(k) Plan, such that allegations about the fees they paid likewise fail to render the recordkeeping claim plausible. *Cf. Johnson v. PNC Fin. Servs. Grp.*, No. 20-CV-1493, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021) (rejecting Stipulation as it did not specify services included). For this reason, the out-of-circuit cases Plaintiffs cite are not persuasive; most inexplicably reject other comparators as "apples to oranges" given the differing plan size or services provided, while at the same time stating it is improper to assess whether the Stipulation is an appropriate benchmark at the pleading stage. Such contradictory reasoning should not be credited over Defendants' authority.

that Defendants' fiduciary process as it relates to fees was deficient.[6] (Doc. 25 at 13-15 (collecting cases)). Indeed, Plaintiffs themselves admit as much when trying to neutralize assertions made by their counsel in other cases by admitting that "a reasonable fee for other plans *in different circumstances* are irrelevant here." (Doc. 33 at 13).

**C.     Derivative Claims and Claims against the Board Remain Subject to Dismissal.**

Plaintiffs' derivative failure to monitor claim fails given that the predicate claims fail. And, the Board has no capacity to be sued under Texas law. *Perkins*, which ***is*** an ERISA case, was cited by Defendants and supports this outcome. (*Compare* Doc. 33 at 20). Neither *Blackmon, Laliberte,* nor *Seidner* addressed the "capacity to be sued" argument advanced here.

| | |
|---|---|
| *Of Counsel:* | Respectfully submitted, |
| Wesley Stockard (Admitted *Pro Hac Vice*)<br>Rachel P. Kaercher (Admitted *Pro Hac Vice*)<br>LITTLER MENDELSON, P.C.<br>3424 Peachtree Rd NE, Suite 1200<br>Atlanta, GA 30326<br>Telephone: 404.233.0330<br>Facsimile: 404.233.2361<br><br>Bradley Crowell (Admitted *Pro Hac Vice*)<br>LITTLER MENDELSON, P.C.<br>1900 Sixteenth Street, Suite 800<br>Denver, CO 80202<br>Telephone: 303.362.2828<br>Facsimile: 303.629.0200 | /s/ Danielle K. Herring<br>Danielle K. Herring (Attorney-in-Charge)<br>Texas State Bar No. 24041281<br>Federal I.D. No. 36896<br>LITTLER MENDELSON, P.C.<br>1301 McKinney Street, Suite 1900<br>Houston, TX 77010<br>Telephone: 713.951.9400<br>Facsimile: 713.951.9212<br><br>**ATTORNEYS FOR DEFENDANTS** |

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 7, 2025, I served a true and correct copy of the foregoing document via electronic service upon counsel of record.

/s/ *Danielle K. Herring*
Danielle K. Herring

---

[6] This is particularly true where allegations show the recordkeeping fee decreased over time, which is consistent with a prudent fiduciary process. (Doc. 18 ¶ 158; Doc. 25 at 17 (collecting cases)). Threadbare speculation that decreases "would be bigger" with a robust fiduciary process cannot render the claim plausible where there is no credible factual allegation showing that other similar plans did in fact get the same services for a cheaper price. (Doc. 25 at 17-18).